McINNIS, Judge ad hoc.
The demand in this case results from an automobile accident that (happened at La-Place, Louisiana, some fifty miles out of Baton Rouge on U. S. Highway 61, commonly called the Airline Highway. The District Court, after trial on the merits, rejected the demands of the plaintiffs, giving written reasons for the judgment. From that judgment, plaintiffs prosecute this appeal and complain of the finding of fact and the legal conclusions reached by the District Court. We believe the statement of fact by the District Court is in the main fairly drawn and we therefore adopt it and will discuss the disagreement of plaintiffs with the statement later in this opinion. We quote from the statement:
“About 9:30 A.M. on Saturday, October 30, 1948, Dr. Harry P. For-syth, of Alexandria, Louisiana, was driving a Chevrolet automobile towards New Orleans along the Airline Highway at a point about SO miles south of Baton Rouge and 30 miles north of New Orleans. The occupants of that car, besides Doctor Forsyth, were his wife, Mrs. Katherine Harris Forsyth, and their minor son Douglas, then about twelve years of age. The For-syths had left their home in Alexandria early that morning and were on their way to New Orleans to attend the Tulane homecoming football game, which was to be played at 2:1S P.M. on that date, and also to visit an older son of Doctor and Mrs. Forsyth, who was then a freshman at Tulane University.
“Mr. Andrew Querbes III, driving an almost new Dodge automobile, was also proceeding towards New Orleans overtaking the Forsyth car. Mr. Querbes had spent the night in Baton Rouge at a motor court on Convention Street near the south limits of the city. It was his intention to arise Saturday morning in sufficient time to drive to New Orleans and meet a friend who was due to arrive in New Orleans on a Seaboard train around 9:00 A.M. and also to meet his (Mr. Querbes’) mother in New Orleans and return with them later in the day to Baton Rouge to' attend a night L.S.U. football game there. Mr. Querbes overslept and did not leave Baton Rouge until about 8:30 and, of course, at the time of the accident was already late for his date at the' railroad station. Mr. Querbes testified, however, that although he was in somewhat of a hurry, it really did not make too much difference, for the young man whom he was to meet would just wait until he did arrive.
“Even at the early hour of 9:30 on this football day, the traffic was very heavy. All who have ever traveled this road on the days when L.S.U. and Tulane are playing football games in Baton Rouge and New Orleans can appreciate and visualize the conditions as revealed by the evidence in this case.
“We find the facts immediately surrounding the accident to be as follows: *284 Doctor Forsyth was driving his car at a speed of around 50 to 55 miles per hour. Mr. Querbes was overtaking him from the rear, driving some faster. As Mr. Querbes neared the Forsyth car, Doctor Forsyth came up behind ‘an old green car’ proceeding in the same direction and traveling still slower than either Doctor Forsyth or Mr. Querbes. Doctor Forsyth took his 'foot off his accelerator, causing his car to reduce its speed, and continued some distance behind the green car. When about 100 feet to the rear of Doctor Forsyth’s car, Mr. Querbes, seeing the Forsyth car drop in behind the green car and reduce its speed1, sounded his horn, pulled to the left side of the highway, which was clear for a sufficient distance to enable him to pass both the Forsyth car and the green car, and accelerated the speed of 'his car in order to pass them both. Mr. Querbes had arrived alongside the Forsyth car wfhen Doctor Forsyth started to pull to the left, thinking to pass the green car in front of him. After he had started this maneuver he suddenly and for the first time saw the Querbes car alongside of him occupying the left lane of the highway into which it was his purpose to move. Startled, Doctor Forsyth cut his wheels back sharply to the right and, being very close to the slow green car in front of him, he forcibly applied his brakes. This maneuver caused his car to begin to skid and then turn over several times across the left side of the highway and into a ditch on that side. In the meantime Mr. Querbes, as he drew alongside the Forsyth car, and seeing the beginning of Doctor For-syth’s maneuver in moving to the left lane, stepped on his accelerator and cut to the left and proceeded down the road on a wide shoulder. ■ The two cars never came in contact and Mr. Querbes through his rear view mirror saw the Forsyth car turning over along the side of the highway he had just come over. After driving down the highway to a convenient spot, Mr. Querbes turned his car around and returned to the Forsyth car which was then upturned in the ditch. He assisted in the removal of the occupants from the car and later transported the Forsyths on to New Orleans to the home of a relative of Mrs. Forsyth’s. The accident occurred on a long straight level stretch of highway through a cane plantation near La-Place.”
It is contended that the trial judge is in error in finding that Mr. Querbes left Baton Rouge at about 8:30 a. m., because Mrs. Forsyth and her son, Douglas, say that on the way from the scene of the accident to New Orleans in Querbes’ car, he said that he had overslept and did not wake up until 9:00 a. m., and on cross-examination, he admitted that he might .have said that, but that actually he had left about 8:30 a. m. The accident happened at about 9:30 a. m. fifty miles from Baton -Rouge and he would have 'been driving at a speed of one hundred miles per hour to cover fifty miles in thirty minutes, which appears unreasonable, and we believe that he left Baton Rouge before 9:00 o’clock. In any event, as we view the case, the speed of the Querbes car before he overtook the Forsyth car is not of much importance. He admits that he was driving more than sixty miles per hour as he was passing the Forsyth car, and counsel contends that under LSA-R.S. 32:-227 he is prima facie at fault and responsible for the accident.
Another complaint of the finding of the trial judge is that he says on page two of his written opinion, “As Mr. Querbes neared the Forsyth car, Doctor Forsyth came up behind an ‘old green car’ proceeding in the same direction and traveling still slower than either Doctor Forsyth or Mr. Querbes. Doctor Forsyth took his foot off his accelerator, causing his car to reduce its speed, and continued some distance behind the green car.” It is contended that the record contains no evidence to the effect that Dr. Forsyth took his foot off the accelerator, reducing speed of his car, and this is correct, but flhe statement is made in-paragraph seven of plaintiffs’ petition, and it is likely that the trial judge took that *285 particular finding from the petition. In addition, Mr. Querbes said Dr. Forsyth slowed down behind the green car and had had ample opportunity to pass it and had not done so and he, Querbes, concluded Dr. Forsyth was not going to pass it, and accordingly speeded up to pass them both.
Still another complaint is the finding of the district judge that Dr. Forsyth was driving fifty to fifty-five miles per hour. Mrs. Forsyth testified he was driving fifty-five to sixty miles per hour. Whatever speed the Forsyth car was going at the time of the accident, the Querbes car was going faster and it is so admitted.
Further complaint is made of the trial judge’s 'finding that the Querbes car was alongside of the Forsyth car when Dr. Forsyth started pulling to the left to pass the green car. The testimony of Mr. Querbes on this point is contradicted by Mrs. Forsyth and her son, who say that Dr. Forsyth had already pulled to the center of the left lane of the highway when the Querbes car came alongside it. When there is conflict in testimony, the finding of the trial judge is accepted, unless he is manifestly in error. He, having seen and heard the witnesses testify, is in better position to arrive at a correct conclusion and we cannot say he was manifestly in error in this finding.
The testimony of State Trooper Math-erne is criticized because of contradictions and inconsistencies. He came upon the scene soon after the accident happened. His report is timed 9:45 a. m., and on this report he says that when questioned, Dr. Forsyth said he “drove off the highway and was unable to explain the reason for so doing.” The testimony of this witness was unsatisfactory and we agree that it is of no particular value.
The brief of plaintiffs is quite lengthy. — -sixty-four pages. It . has been carefully read, including citations, and reduced to the minimum, it appears that the contention that defendant violated the provisions of LSA-R.S. 32:227 and 32:233 and therefore convicted the driver of a passing car of negligence, and that the rule in the case of Greer et ux. v. Ware, La.App., 187 So. 842, which cites Stevens v. Dean, 6 La.App. 537, is applicable to the facts in this case. From the rule laid down in these cases, it is argued that the driver of a car owes no duty to look out for cars following behind and may use the road in any manner desired and the forward car has the superior right. See also Allison v. Turner, La.App., 53 So.2d 256. The two cases principally relied upon, cited above, are entirely different factual cases from this one. In Greer v. Ware, supra, the school bus was being driven along a gravel road on which there had been recent rains, and he was driving in ruts in or near the center of the road because there were two well beaten paths or tracks on that part of the road, and defendant Ware, desiring to pass the bus, drove on to the left shoulder of the highway and blew his horn, increased his speed and attempted to pass, but the school bus driver did not yield the road and a collision resulted. There is a vast difference between driving along such a road as described in the Greer case, and the Airline Highway between Baton Rouge and New Orleans, where the record in this case shows that even at the early hour of 9:30 a. m. the traffic was heavy, and in such situations, we do not agree that the driver of the forward car has no duty to following cars, and, in our opinion, some lookout should be kept .for them, and if Dr. Forsyth had done this, he would have seen the Querbes car approaching from the rear and attempting.to pass him, which he apparently did not do, and gave no timely warning of his intention to leave the right lane of the highway and move into the left lane in the path of the oncoming car.
 In order to recover in this case, it is necessary that the plaintiffs show by a preponderance of the evidence that Querbes was guilty of negligence which was the proximate cause or a proximate cause of the accident and resulting injury, and we agree with the-finding of the trial judge that plaintiffs have not met this burden that is always on the plaintiff. On the contrary, it is our opinion that the failure oí Dr. Forsyth to take any note of traffic approaching from his rear and failure to give any timely warning of his intention to pull *286 to the left lane of the highway, and his effort to do so as the Querbes car was alongside him was the proximate cause of this tragic accident.
Discussion of the many other authorities cited in plaintiffs’ brief would serve only to lengthen this opinion without producing any different conclusion, and for that reason we forego such discussion.
For the above reasons, we are of the opinion that the judgment of the District Court is correct and accordingly it is affirmed, at the costs of plaintiffs-appellants.